IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HENRY CALHOUN, JR.,
        Plaintiff,

vs.                              Case No. 3:09cv268/MCR/MD

UNITED STATES GOVERNMENT, et al.,
        Defendants.

---

## REPORT AND RECOMMENDATION

Plaintiff has filed suit against the United States of America and Michael Donley in his official capacity as Secretary of the Air Force, alleging constitutional and tort claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680. (Doc. 1). Defendants move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim, alternatively moving for summary judgment. (Doc. 18). Plaintiff has responded in opposition to the motion. (Docs. 25, 26, 33). On May 5, 2010, the court entered an order requiring additional briefing on the issue of subject matter jurisdiction. (Doc. 34). The parties have responded and supported their submissions with affidavits and other evidentiary materials. (Docs. 35, 36). Upon review of the record, it is the opinion of the undersigned that this court lacks subject matter over plaintiff's tort claims, and that even if such claims were not jurisdictionally barred, the complaint should be dismissed for failure to state a claim.

## FACTS UNDERLYING PLAINTIFF'S COMPLAINT

In his complaint filed on June 19, 2009, plaintiff describes this suit as one "against the U.S. Air Force for Invasion of privacy, Nuisance, Battery, Property

Contamination, Radiation, and Lead poison." (Doc. 1 at 3). Plaintiff asserts these claims under the FTCA, 28 U.S.C. § 2671, but additionally references "Invasion of Privacy 1st, 4th, and the 14th amendment." (*Id*. at 9). Plaintiff's claims are based on his belief that the Air Force has engaged in covert activities involving radioactive chemicals in his neighborhood, and that such activities have contaminated him, his family and his home with radiation and lead. As relief, plaintiff seeks $5 million in damages, and an order directing defendants to "cease this unethical activity." (*Id*.).

The allegations of the complaint may be summarized as follows. On March 14, 2004, plaintiff became aware of a chemical residue on his home. (Doc. 1 at 3). The residue appeared again on November 7, 2004, and on December 13, 2004. On the latter date, plaintiff took pictures of the residue and collected a sample. On December 14, 2004, plaintiff submitted the pictures and residue to then Senator Hillary Clinton "and the Congress Committee," and requested a hearing "to discuss this inappropriate conduct by the military." (*Id*.). In response, plaintiff received a telephone call from one Mrs. Jane Harris. When asked by Ms. Harris why plaintiff was sending a chemical to Senator Clinton, plaintiff explained that he had seen similar material when he worked for the Department of Defense in the early 1980s, that he recalled a 2002 news media report that Congress had given the Air Force permission "to use the Laser to touch down to earth;" and that Senator Clinton had opposed it. When Ms. Harris asked plaintiff what he intended to do if his request for a hearing was not granted, plaintiff replied that he would contact the Cochran Law Firm "to see whether or not any legal action can be filed against the military." (*Id*. at 4). The Cochran Law Firm declined to represent plaintiff.

Thereafter from 2005 through 2008, the chemical residue reappeared numerous times on plaintiff's home. On December 1, 2005, plaintiff began submitting samples of the residue to various agencies, including the Escambia County Health Department, the Center for Disease Control, the Food and Drug Administration, the Environmental Protection Agency, and the Federal Bureau of

Investigation. (*Id.* at 4-7). On December 5, 2005, Stephen C. Metzler, an Environmental Supervisor with the Escambia County Health Department, notified plaintiff of the results of his testing. His letter stated, in relevant part:

> You indicated to this department that your house may have been subject to radiation experiments. You submitted several samples and pictures with your concerns.
>
> We have reviewed the pictures and do not know of any radiation device or material that would cause the staining as indicated on the pictures. In addition we have tested the samples using Lionel Electronic Laboratories CDV-700 Model 6b radiation detection device. According to the CDV-700 the radiation being emitted was less than 0.1 milliroentgens per hour (mr/hr).
>
> If you compared these results to other materials found in our environment this material does not pose a health threat. Other materials such as asphalt found on our local highways have a higher emanation rate than the material you have submitted.

(Doc. 16, Ex. 5; *see also* Doc. 1 at 5). In July of 2006 plaintiff contacted Mr. Metzler again. (Doc. 1 at 5). On August 2, 2006, Mr. Metzler submitted plaintiff's samples to the Florida Department of Health. (*Id.*). On August 28, 2006, Joseph Escalante, Chemist Administrator with the Florida Department of Health, notified Mr. Metzler of the results of that agency's testing. The letter stated, in relevant part:

> The results of the sample sent for radiological analysis is [sic] more qualitative than quantitative due to the amount essayed and the geometry of the samples.
>
> There were no fission products detected. The activity detected was the result of naturally occurring materials. The scan detected potassium-40, lead-210, and lead-212 at very low levels. The activity was at levels that you can normally find in the environment due to the naturally occurring radioactive materials that's [sic] present.
>
> The actual numbers generated from the scan are misleading due to the sample amount and geometry. The scan served the purpose of looking for out of the normal activity to see if further measurements would be necessary.

I have also included the samples scanned as requested.

(Doc. 16, Ex. 6; *see also* Doc. 1 at 5).  After receiving these results, plaintiff inquired of Mr. Escalante whether the chemical was toxic, to which Escalante replied he did not know.  (Doc. 1 at 5).  The Escambia County Health Department closed its investigation on October 11, 2006.  (Doc. 16, Ex. 7).

On February 15, 2007, plaintiff returned to the county health department and left additional samples for testing.  (Doc. 1 at 5).  Apparently Mr. Metzler forwarded those samples to Mr. Escalante.  In a letter dated August 6, 2007, Mr. Escalante reported the following results:

> The results of the samples sent for radiological analysis are more qualitative than quantitative due to the sample matrix, amount essayed, and the geometry of the sample.
>
> The sample was measured for alpha, beta, and gamma activity. The entire sample volume submitted was measured for gamma activity. Two portions of the sample were tested for alpha and beta activity.  The resulting activity detected was at background levels.  I have summarized the calculated activity on the attached page.
>
> I have also included the remaining sample and the pictures.

(Doc. 16, Ex. 8; *see also* Doc. 1 at 5).

After receiving Mr. Escalante's letter, Mr. Metzler wrote plaintiff on August 10, 2007.  (Doc. 16, Ex. 9).  Mr. Metzler noted that plaintiff had "on several different occasions submitted samples for this department to analyze and on each occasion the analysis results did not indicate any radiation levels above background activity." (*Id*.).  Mr. Metzler went on to advise plaintiff of Mr. Escalante's findings concerning the most recent samples plaintiff submitted:

> We analyzed the sample submitted by you and again, the results do not indicate any radioactive activity above background levels. Therefore according to these analysis results it does not appear that there is a radiological public health threat to your home or the immediate area. . . .

Further investigation concerning other potential radiological health threats will no longer be conducted by this department unless other agencies submit evidence to indicate that a threat exists. . . .

(*Id.*).

In the meantime, on May 12, 2007, plaintiff submitted samples to the Food and Drug Administration. On May 15, 2007, the FDA notified plaintiff that it was unable to provide assistance, and suggested plaintiff contact the Environmental Protection Agency. (Doc. 1 at 18). On May 24, 2007, plaintiff submitted samples to the EPA. Apparently concerned that plaintiff's package posed a security threat, the EPA contacted the FBI. On May 25, 2007, one John Blair with the FBI spoke with plaintiff. After ascertaining the purpose and nature of plaintiff's package Mr. Blair indicated that the FBI would perform testing on the samples. (*Id.* at 6). Plaintiff does not indicate what further contact, if any, he had with Mr. Blair.

## PROCEDURAL HISTORY

On February 29, 2008,[1] plaintiff presented an administrative tort claim to the Department of the Air Force. (Doc. 1 at 6; Doc. 16, Ex. 1 at 1). In his administrative complaint, plaintiff described his claims as: "Invasion of Privacy, Nuisance, Battery or Attempted Murder" and identified the date of the incident as "August 30, 2006 to present." (Doc. 16, Ex. 1 at 1). Plaintiff described the following damage to his property: "My Home is infested with Radiation, Lead 210 & 212." (*Id.*). He also described personal injury as follows: "Please see attached letters, pictures, and video tapes, C.D.s. All Medical Evidence will be presented in Court." As relief, plaintiff requested $200,000 for the damage to his property and $6 billion for the personal injury claim. In an attachment, plaintiff explained:

This lawsuit is to make restitution for all the children with the cleft palate, for the women who developed breast cancer, for the

_____

[1]Although plaintiff's claim is dated February 14, 2008, it was "presented" to the Air Force for purposes of 28 U.S.C. § 2401(b) on February 29, 2008, the date it was received by the Air Force. (Doc. 16, Ex. 1). 28 C.F.R. § 14.2(a).

children who has [sic] autism, and for the children with muscular dystrophy.

The 6 Billion dollars will be donated to this organization for research and for a cure.

This lawsuit is not for myself, but for God's people that your organization have harmed.

This kind of illegal activity is unethical and unconstitutional.

(Doc. 16, Ex. 1 at 3). One of the attachments to plaintiff's administrative complaint was a letter from the Department of Defense Radiation Experiments Command Center dated May 15, 1995. The letter indicated that on February 1, 1995, plaintiff was sent a survey regarding "possible human ionizing radiation experiments," and that plaintiff had not returned the survey. (*Id*. at 4).

On August 27, 2008, the Air Force mailed plaintiff, by certified mail, its notice of final denial of his claim. (Doc. 5, p. 2; Doc. 35, Ex. 3). The letter denying the claim stated, in relevant part:

Here, you have alleged that your home is contaminated with "radiation, Lead 210 and Lead 212." You also allege injury to children with cleft palate, autism, and muscular dystrophy, as well as to women with breast cancer. As an initial matter, you do not have standing to assert claims for these groups of people. Further, you have failed to show that the Air Force took any negligent act that resulted in harm to you or to your property. Moreover, the laboratory results you submitted with your claim show that there are no more than background levels of radiation in the samples taken from your home. Finally, the Federal Tort Claims Act's two-year statute of limitations bars your claim. On 15 May 1995, you contacted the Radiation Experiment Command Center with concerns about radiation damage, but you did not file your claim until 14 February 2008. 28 U.S.C. § 2401(b) and Air Force Instruction 51-501, Paragraph 2.3 require that a claim must be presented to the appropriate federal agency in writing two years after the claim accrues. Therefore the two-year statute of limitations has expired and your claim is barred.

This is the final denial of your tort claim. If you are dissatisfied with this decision you may file suit in an appropriate United States

District Court not later than six months after the date of the mailing of this letter.

(Doc. 5 at 2-3).  The letter was signed by Douglas D. Sanders, Chief of the Environmental Litigation Center, Environmental Law and Litigation Division.  The letter identified Mr. Sanders' return address as: "AFLOA/JACE, 112 Luke Avenue, Suite 343, Bolling AFB, DC, 20032-8000."  (*Id.*, at 2).[2]  The "Track and Confirm Results" submitted by defendants shows that the notice of final denial of plaintiff's claim was delivered to plaintiff on September 2, 2008.  (Doc. 35, Ex. 3).

Plaintiff has submitted an affidavit in which he states he received the notice of final denial of his claim on August 27, 2008.  (Doc. 36, Calhoun Aff., p. 4 in ECF).  He states that on September 18, 2008, he "submitted a certified letter to the Air Force in response to their letter dated August 27, 2008," and "also sent the chemical with the radiation, . . . a report from the Ferry Pass Fire Department dated September 5, 2008 . . . and a new claim with pictures . . . ."  (*Id.*).

Defendants have submitted affidavits from those members of the Air Force involved in the handling plaintiff's lawsuit and administrative claim, stating that the agency never received plaintiff's certified letter.  (Doc. 35, Exs. 1, 2).

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim, alternatively moving for summary judgment.  (Doc. 18; *see also* Docs. 14-16).  Defendants contend this court lacks subject matter jurisdiction over plaintiff's tort claims because his administrative claim was filed outside the two-year statute of limitations contained in 28 U.S.C. § 2401(b).[3]  Defendants additionally assert plaintiff lacks standing to bring his damages claims, because he has not plainly asserted a claim of personal injury for himself and lacks standing to sue on behalf of others.  Finally, defendants assert

_____

[2]"AFLOA" stands for Air Force Legal Operations Agency.

[3]Defendants do not address what effect, if any, plaintiff's allegation of a continuing violation has on this issue.

that none of plaintiff's individual tort claims state a plausible claim for relief, which warrants dismissal of this action with prejudice or a grant of summary judgment in their favor. (Doc. 14). Plaintiff has responded in opposition to the motion, arguing that he can prove that the chemicals are dangerous, that defendants' activities are ongoing, and that such activities have caused him "physical damage, property damage and emotional stress damage . . . ." . (Docs. 25, 26).

On May 10, 2010 the undersigned reviewed the pleadings and record in this case and found that supplementation of the record was necessary on the issue of subject matter jurisdiction, specifically, whether plaintiff filed this lawsuit within six months after the Air Force's final denial of his claim. (Doc. 34). The parties have filed responses to that order. (Docs. 35, 36).

## SUBJECT MATTER JURISDICTION

### Rule 12(b)(1) Standard

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be based upon either a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).[4] "The district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413.

A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."

---

[4] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit, all decisions of the former Fifth Circuit announced prior to October 1, 1981).

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.* (quoting *Menchaca*, 613 F.2d at 511). In a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach and, where the elements of the underlying cause of action are not implicated, the court is free to weigh the evidence. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999); *Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001). Defendants presents their motion to dismiss as a factual attack.

<u>Rule 12(b)(h) Standard</u>

Federal courts are "obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking." *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

<u>Applicable FTCA Law</u>

Before bringing an FTCA action in federal district court, a claimant must first exhaust his administrative remedies by filing an administrative grievance with the appropriate federal agency within two years of the date the claim accrues. Specifically, 28 U.S.C. § 2675(a) provides, in relevant part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). Title 28 U.S.C. 2401(b) provides:

> **A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.**

28 U.S.C. § 2401(b).

Once the agency mails notice of final denial of the claim, the claimant has six months in which to bring an action in district court. 28 U.S.C. § 2401(b); *Phillips v. United States*, 260 F.3d 1316, 1317 (11th Cir. 2001) ("It is undisputed that under section 2401(b), a tort claim must be presented to the appropriate federal agency within two years after the claim accrues *and* the lawsuit must be commenced within six months after the receipt of a final agency decision."); *Day v United States*, No. 4:08cv92/SPM/WCS, 2008 WL 4327361, at*1 (N.D. Fla. Sept. 16, 2008) ("In construing the plain meaning of section 2401(b), tort claimants filing suit against the United States can be barred by the statute of limitations in two ways: (1) they can be barred if they do not file a claim with the appropriate federal agency within two years; or (2) they can be barred even if they do file a timely administrative claim, but fail to file a suit in district court within six months after final notice of the agency's action on their claim.").

The six-month period for filing an action in district court will be tolled if a claimant timely files a request for reconsideration with the agency that denied the claim:

> **Prior to the commencement of suit and prior to the expiration of the 6-month period provided in 28 U.S.C. 2401(b), a claimant, his duly authorized agent, or legal representative, may file a written request with the agency for reconsideration of a final denial of a claim under paragraph (a) of this section. Upon the timely filing of a request for reconsideration the agency shall have 6 months from the date of filing in which to make a final disposition of the claim and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until 6 months after the filing of a request for reconsideration. Final agency action on a request**

for reconsideration shall be effected in accordance with the provisions
of paragraph (a) of this section.

28 C.F.R. § 14.9(b); *see also Moya v. United States*, 35 F.3d 501, 503 (10th Cir. 1994);
*Gervais ex rel. Bremer v. United States*, 865 F.2d 196, 197 (9th Cir. 1988); *Estate of
Carr ex rel. Carr v. United States*, 482 F.Supp.2d 842, 848-49 (W.D. Tex. 2007); *see
Spencer v. U.S. Postal Serv*., No. 3:07cv150/RS/EMT, 2007 WL 2566031 (N.D. Fla.
Aug. 31, 2007) (unpublished) (applying similar provision applicable to claims against
the Postal Service). Under the applicable regulations, the request for
reconsideration is deemed "filed" when received by the agency. 28 C.F.R. §§ 14.9(b),
14.2(a).

Failure to timely exhaust administrative remedies is a jurisdictional bar to
litigation in federal court, and a claim that is not filed properly with the appropriate
agency within two years of accrual is subject to dismissal for lack of subject matter
jurisdiction. *See Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir.
2008) ("A federal court does not have 'jurisdiction over a suit under the FTCA unless
the claimant first files an administrative claim with the appropriate agency . . . within
two years from the time the claim accrues . . . accompanied by a claim for money
damages in a sum certain.'") (quoting *Dalrymple v. United States*, 460 F.3d 1318,
1324 (11th Cir. 2006)); *see also, e.g., Chasteen v. United States*, 334 Fed. Appx. 271
(11th Cir. 2009) (unpublished) (affirming dismissal for lack of subject matter
jurisdiction where plaintiff failed to file her administrative claim with the agency
within the two-year period).

Similarly, failure to timely file a civil action in district court is a jurisdictional
bar that prevents judicial review of a tort claim against the United States. *Phillips*,
260 F.3d at 1319 (affirming dismissal of plaintiff's FTCA claims for lack of
jurisdiction, where plaintiff did not file her action in district court within six months
after she received notice that her claims had been administratively denied); *Shoff v.
United States*, 245 F.3d 1266 (11th Cir. 2001) (affirming dismissal of plaintiff's FTCA

claims where plaintiff filed his complaint in federal court seven months after the date of mailing of the agency's denial letter).

## Plaintiff did not comply with the six-month limitations period for filing suit in this court

Although defendants seek dismissal on the grounds that plaintiff failed to comply with the two-year limitations period for presenting his administrative claim, this court must satisfy itself that plaintiff also met the six-month deadline for filing suit in this court. *See Chacon-Botero v. U.S. Attorney Gen.*, 427 F.3d 954, 956 (11th Cir. 2005) (Federal courts are "'obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking.'") (quoting *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) (internal quotation marks omitted)). The court has reviewed the entire record, including all materials submitted by the parties,[5] and concludes that this lawsuit was not filed within the six-month limitation imposed by the FTCA and, therefore, is jurisdictionally barred.

It is undisputed that the Air Force mailed its notice of final denial of plaintiff's administrative claim on August 27, 2008. It is further undisputed that plaintiff failed to comply with § 2401(b)'s requirement that he commence suit within six months after his claim was denied by the Air Force. The question is whether plaintiff is entitled to tolling of the six-month period on the ground that he filed a request for reconsideration with the Air Force within the six-month period.

Plaintiff has attached a copy of the certified letter he sent on September 18, 2008. (Doc. 36, Letter from Calhoun to "Sir", pp. 16-20 in ECF). The letter is undated and does not contain the name, title or address of the addressee. It begins, "Dear

---

5In deciding whether subject matter jurisdiction exists, a court may consider the pleadings and matters outside the pleadings, such as testimony and affidavits, in order to satisfy itself as to its power to hear the case. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Sir," and states that it is "in reference to  your letter dated August 27, 2008." (*Id.*, p. 16 in ECF.).   Plaintiff goes on to clarify the nature of his May 15, 1995 correspondence with the Radiation Experiment Command Center, which formed the basis of the Air Force's finding plaintiff's claim barred by the two-year statute of limitations.   Plaintiff then states, in relevant part:

> Mr. Sanders if you are trying to establish a time motive, it officially began August 28, 2006 when I received the report back from the Health Dept. in Orlando from Joseph Escalante the Chemist Adm. indicating that the chemical had Radiation, Lead 210 & 212 and Potassium 40, which is a radioactive substance that can only be produce[d] by a Hitech Laser.
>
> . . . .
>
> On Sept. 5, 2008 this chemical appeared on my home again.  I called the Sheriff's Dept. again and spoke with Steve Bates.  Mr. Bates indicated that this is not a police matter but an F.B.I. matter.  So the Sheriff's Dept. called the Fire Dept. and the Fire Dept. came by and did an investigation and wrote up a report.  (Enclosed is the report from the Fire Dept.).
>
> The Escambia Sheriff's Dept. indicated that I need to file another claim and don't include those people with cleft palate, autism, and etc. but to file a claim for yourself because the problem is still going on.
>
> Mr. Sander I am not trying to surmise your integrity but the U.S. Air Force will never omit to wrong doing.  In the court of law you have to have physical evidence that this problem is still going on.  The chemical enclosed indicates that the Air Force is still using this deadly weapon (the Laser).
>
> God knows you are using it and the Escambia Sheriff's Dept. is aware that the problem hasn't ceased.
>
> I am praying to God that this issue can be resolved without going to Federal Court.

(*Id.*, pp. 18-20 in ECF).   Plaintiff, by sworn declaration, states that he sent the foregoing letter to the Air Force via certified mail.  (Doc. 36, Calhoun Aff., p. 4 in

ECF). He has attached a copy of the certified mail receipt. The receipt indicates that the letter was mailed on September 18, 2008 to the following address: "Secretary of Air Force Office of Public [sic], 1690 Air Force Pentagon, Washington, D.C. 20330." (*Id.*, p. 12 in ECF). Plaintiff further states that in addition to the letter, he "also sent the chemical with the radiation, . . . a report from the Ferry Pass Fire Department dated September 5, 2008 . . . and a new claim with pictures indicating that the Air Force is continuing using a military weapon (the Laser) on plaintiff [sic] home and property, because the problem hasn't ceased but on going." (*Id.*, Calhoun Aff., p. 4 in ECF).

As proof that his certified letter and materials were actually received, plaintiff states under oath that on October 2, 2008 he was contacted by Troy Brown, an investigator with the Escambia County Sheriff's Office, and "Agent Neil Raftery from the Pentagon." (*Id.*). Plaintiff and Agent Raftery "had a confrontation over the chemical that was sent to the Pentagon on September 18, 2008." During a visit to plaintiff's home, Agent Raftery took pictures of plaintiff's home. (*Id.*, p. 6 in ECF). Later that day plaintiff, accompanied by Darrell A. Hawkins, met with Mr. Brown and Agent Raftery at the Escambia County Sheriff's Office. During that meeting Agent Raftery produced a copy of plaintiff's September 18, 2008 certified letter. (*Id.*; *see also* Doc. 36, Hawkins Aff., p. 8 in ECF). Plaintiff states that he waited until June 16, 2009 to file his lawsuit, because "Plaintiff was waiting for a response in writing from the Air Force in reference to his August 27, 2008 letter and the new claim plaintiff filed on September 18, 2008." (*Id.*, p. 7 in ECF). Plaintiff has not provided a copy of the alleged "new" administrative claim.

The defendants have submitted the affidavit of Sheri Lewis, an Air Force Tort Claims and Litigation Program Manager assigned to handle this lawsuit. Ms. Lewis states that she reviewed the complete Air Force file regarding this matter (both the electronic and paper file), and that the original letter plaintiff says he mailed on September 18, 2008 was not in the file. There was no copy of, or reference to,

plaintiff's certified letter, with the exception of the copy plaintiff attached to his pleading filed in this case. (Doc. 35, Ex. 1, Lewis Aff. ¶ 3). Ms. Lewis further notes that there was no responsive letter from the Air Force, nor an electronic or paper copy of, or reference to, any responsive letter. (*Id.*, ¶ 4).

Cara Johnson, the Air Force attorney who handled the final adjudication of plaintiff's 2008 administrative claim, states under oath that if the Air Force had received plaintiff's letter responding to the denial of his claim, she would have reviewed it. She never saw the letter in question prior to seeing the copy attached to plaintiff's pleading in this case. (Doc. 35, Ex. 2, Johnson Aff. ¶¶ 4, 5). She further states:

> In accordance with USAF policy and standard practice, had the plaintiff sent the letter to the USAF in August 2008, as he claims, correspondence would have been sent back to him from the USAF, either telling him that his claim was under reconsideration and the USAF had six months from the date of receipt of his letter to issue a final denial, or that his letter was not considered to be a request for reconsideration and the date of denial of his original administrative claim, August 27, 2008, was still the date of denial of his claim.

> There is no copy of nor any reference to the USAF ever having received plaintiff's letter, allegedly dated August 27, 2008, in the USAF file.
> There is no copy of nor any reference to any letter from the USAF in response to the plaintiff's letter, allegedly dated August 27, 2008, in the USAF file.

(*Id.*, ¶¶ 6-8).

The undersigned finds that, although questionable, plaintiff's September 18, 2008 certified letter constituted a request for reconsideration. *See Glover v. United States*, 111 F.Supp.2d 190, 195 (E.D. N.Y. 2000) ("The evident purpose behind [the] adoption of reconsideration procedures is to facilitate the settlement of claims by asking the agency to take a second look at the claim, perhaps with additional evidence."). The question is whether plaintiff has shown that the Air Force received his request.

Although plaintiff has come forward with direct proof that his request for reconsideration reached the Pentagon, he has provided no direct proof that it was received by the agency that denied his claim – the Air Force. To the contrary, he acknowledges that one "Agenty Raftery" received his request. Plaintiff neither claims nor alleges facts to suggest that Agent Raftery was with the Air Force. Without direct proof, the question arises whether plaintiff is entitled to a <u>presumption</u> that his request for reconsideration was received by the Air Force.

"The common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee." *Konst v. Florida E. Coast Ry. Co.*, 71 F.3d 850, 857 (11th Cir. 1996). In *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232 (11th Cir. 2002), the Eleventh Circuit applied that common law "mailbox rule" to a medical malpractice claim under the FTCA and held that the district court's decision to dismiss the complaint on jurisdictional grounds was clearly erroneous. The defendant in *Barnett* sought dismissal of the complaint, alleging that the plaintiff had failed to timely mail, and the federal agency had failed to timely receive the plaintiff's administrative tort claim. The *Barnett* court determined that the plaintiff was entitled to a presumption that his claim was received by the government if he could demonstrate three facts: "(1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed." *Barnett*, 283 F.3d at 1240. The *Barnett* court concluded that the presumption of receipt attached in its case because the plaintiff provided uncontradicted evidence that he mailed the necessary document; the document was mailed in a "business reply mail" envelope that had been sent to him by the government agency, thus satisfying the requirement that the document be properly addressed; and the envelope did not need to be stamped because, as was clearly marked on it, the "postage [would] be paid by [the] Department of Veteran Affairs." *Id.*

Having determined that the plaintiff was entitled to a presumption that his claim was received by the government agency, the court then examined whether the

agency had rebutted the presumption of receipt. After all, as the court noted: "[T]he presumption of receipt is 'not a conclusive presumption of law, but a mere inference of fact, founded on the probability that the officers of the government will do their duty and the usual course of business; and, when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case . . . in determining the question whether the letters were actually received or not.'" *Id.* at 1240 (quoting *Rosenthal v. Walker*, 111 U.S. 185, 193-94, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884)); *see Rios v. Nicholson*, 490 F.3d 928, 933 (11th Cir. 2007) ("The presumption of receipt . . . is one of fact, not of law."); *Schutz v. Jordan*, 141 U.S. 213, 220, 11 S.Ct. 906, 35 L.Ed. 705 (1891) (holding that the presumption of receipt "is not conclusive, but subject to control and limitation by other facts.").

In *Barnett*, although individuals within the government agency submitted declarations that they had not received the claim, the court found such declarations to be "deficient" in rebutting the presumption of receipt. Central to the court's determination that the presumption stood unrebutted was that the envelope in which the claim was allegedly mailed was addressed to an administrative office, the "Department of Veteran Affairs, VA Medical Center," and not to a specific individual within the office. The court found "[t]his distinction [to be] crucial." *Id*. at 1241. The *Barnett* court stated:

> If a court needed to resolve whether an individual person received an item mailed to him or her, then it need only seek testimony from that person as to whether he or she had received the item. Determining whether an office receives an item mailed to it is another, more complicated matter altogether. A court could not rely on the bare assertion of one member of the office that the mail was not received, since the mail might have been received by another. The court would need testimony about the office's practice and procedure for receiving and filing incoming mail – that is, circumstantial evidence – in order to draw an inference that the mail was or was not received.

*Id*. at 1241. The *Barnett* court therefore determined that the declarations of non-receipt by individuals within the agency were insufficient in rebutting the

presumption of receipt because the declarations failed to discuss office procedures for processing received mail. *Id.* at 1242. Further, because the declarations were the only rebuttal evidence provided by the government agency, the *Barnett* court found that the presumption of receipt survived. *Id.*

Here, plaintiff's certified mail receipt shows that his request for reconsideration was properly stamped and mailed. As to whether it was properly addressed, the pertinent federal regulation required that it be filed with "the agency." 28 C.F.R. § 14.9. Plaintiff's certified mail receipt shows that plaintiff's request for reconsideration was mailed to the Air Force at the same address as his original administrative claim: Secretary of the Air Force, Office of Public Affair [sic], 1690 Air Force Pentagon, Washington, D.C. 20330. (*See* Doc. 16, Ex. 1; Doc. 36, Certified Mail Receipt, p. 12 in ECF). Because the request for reconsideration was mailed to an administrative office and not a person, in order for Ms. Lewis' and Ms. Johnson's declarations to support an inference that the Air Force did not receive plaintiff's request, they would need to testify about the department's practice and procedure for receiving and filing incoming mail. They have not.

But there are other circumstances of this case which distinguish it from *Barnett*, and which support an inference that the Air Force did not receive plaintiff's request for reconsideration – plaintiff's own evidence that his request for reconsideration was intercepted by another department at the Pentagon due to plaintiff's enclosure of a suspicious liquid. The evidentiary materials attached to plaintiff's responsive affidavit include an Offense Report from the Escambia County Sheriff's Office. The report details Agent Raftery's visit to plaintiff on October 2, 2008. (Doc. 36, ECSO Offense Report, pp. 13-15 in ECF). The report contains the following narrative:

> The Sheriff's Office was contacted by Special Agent Raftery from the Pentagon Force Protection Agency, who advised they received a suspicious liquid from OP/Calhoun and requested our assist in contacting OP/Calhoun. Special Agent Raftery and I contacted OP/Calhoun at his residence which he advised he did send liquid to the

**Pentagon to show them that the U S Air Force was conducting special experiments on his home and he meant no harm. He advised he has, for several years, tried to get the government's cooperation for the investigation, but has been unsuccessful. OP/Calhoun later responded to the Sheriff's Office and presented several documents and video coverage of, what he called, suspicious activity. OP/Calhoun previously had this material tested by the Florida Department of Health and found that it was, in no way, a danger to any persons.**

**Special Agent Raftery and I advised OP/Calhoun not to mail any suspicious items to any federal agency, which he understood. It did not appear that any harm was committed by OP/Calhoun and there was no criteria for OP/Calhoun to be Baker Acted.**

(*Id.*, p. 14 in ECF). This report and the affidavits submitted by plaintiff demonstrate that plaintiff's request for reconsideration was received by a federal law enforcement agency – the Pentagon Force Protection Agency – not the Air Force.[6] Thus, although plaintiff may meet the technical requirements supporting a presumption that the Air Force received his request, when that is weighed against the evidence that plaintiff's inclusion of a suspicious liquid caused the request to be diverted to the Pentagon Force Protection Agency, the court finds that plaintiff's request for reconsideration was not received by the Air Force.

---

[6]*See* **Doc. 36, p. 13 in ECF. As described on that agency's website:**

**The Pentagon Force Protection Agency (PFPA) is a civilian Defense Agency within the Department of Defense charged with protecting and safeguarding the occupants, visitors, and infrastructure of the Pentagon, Navy Annex and other assigned Pentagon facilities.**

**This critical mission is accomplished with law enforcement officers (United States Pentagon Police), criminal investigative and protective services agents; threat management agents; chemical, biological, radiological, nuclear and explosives technicians; and anti-terrorism/force protection and physical security personnel.**

**PFPA provides a variety of services to its customers to include emergency services, parking management, lock installation/services, classified waste disposal, access control, building pass issuance, emergency escape mask issuance / training, <u>mail screening</u>, and law enforcement.**

*See* **http://www.pfpa.mil/index2.html (emphasis added).**

Because plaintiff's request for reconsideration was not received by, or filed with the Air Force, it did not toll the six-month period for filing suit in federal court. Consequently, because plaintiff filed this action more than six months after the date of mailing of the notice of final denial of his administrative claim, his tort claims are time-barred.

Generally, "statutes of limitations are subject to equitable tolling." *Robinson v. United States*, 327 Fed. Appx. 816 (11th Cir. 2007) (unpublished) (citing *United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)). Although the United States Court of Appeals for the Eleventh Circuit has not yet decided whether equitable tolling is "available for untimely claims brought under the FTCA," *Torjagbo v. United States*, 285 Fed. Appx. 615, 618 (11th Cir. 2008) (unpublished), this court need not decide the issue because the record, as a whole, does not support the application of equitable tolling. The Supreme Court has held that equitable relief should be expanded only sparingly to individuals and highlighted two scenarios demonstrating the application of such relief.

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)(citations omitted); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."); *see, e.g., Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 157, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (permitting tolling if "affirmative misconduct on the part of a defendant lulled the plaintiff into inaction"). "[T]he

principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96.

Assuming that the Pentagon Force Protection Agency's confiscation of plaintiff's September 18, 2008 package was an extraordinary circumstance, the record demonstrates that plaintiff was partly responsible for that circumstance by mailing a suspicious liquid with his request for reconsideration. Furthermore, plaintiff was not tricked by any federal agency to delay filing his claim.

Moreover, plaintiff has not shown that he diligently pursued his judicial remedy. He does not state that he ever attempted to file suit within the six-month limitations period, much less that he <u>diligently</u> pursued relief. He merely states that he waited for a response to his request for reconsideration and, when none came, filed this lawsuit. That does not suggest diligence. Plaintiff's encounter with law enforcement (Agent Raftery) in October of 2008 would have put a reasonable person on notice that plaintiff's package (containing his request for reconsideration, the chemical and other evidence, and plaintiff's "new claim") did not reach the Air Force but was instead intercepted by another agency due to the presence of the chemical. Plaintiff does not state that he ever followed up with Agent Raftery or anyone in the Air Force (including Mr. Sanders), to determine the status of his request for reconsideration, or to inquire whether it had reached the Air Force. To the contrary, plaintiff indicates that he sat idle until June 16, 2009.

Plaintiff's tort claims, filed over nine months after notice of final denial of his administrative claim, are jurisdictionally barred.

## THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST THE DEFENDANTS

Even if plaintiff's tort claims were not jurisdictionally barred, this cause (including plaintiff's constitutional claims) is due to be dismissed. Defendants seek dismissal under Rule 12(b)(6), or in the alternative, summary judgment, on the grounds that plaintiff has not presented any evidence that the Air Force engaged in

the alleged misconduct (testing which could or would result in the release of radiation), or that the levels of radioactive activity at his home exceed background levels (those that an individual could find in the environment due to naturally occurring radioactive materials). To support their first contention, defendants argue that the Radiation Exposure Compensation Act ("RECA"), codified at 42 U.S.C. § 2210, sets forth those geographic areas that have historically been exposed to radiation released during above-ground nuclear weapons tests. Those areas include the Nevada, Pacific, Trinity and South Atlantic Test Sites. Pensacola is not within any of those areas. (Doc. 14, pp. 15-16 in ECF). To support their argument concerning the lack of evidence that the level of radioactive activity is harmful, defendants rely on the Metzler and Escalante reports submitted by plaintiff, as well as a public health statement issued by the Agency for Toxic Substances and Disease Registry. (Doc. 16).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts a complaint's well pleaded allegations as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11ᵗʰ Cir. 1994). There are a few exceptions to this rule, however, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Furthermore, only <u>well pleaded</u> factual allegations are taken as true and only <u>reasonable</u> inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11ᵗʰ Cir. 1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5ᵗʰ Cir. 1980);[7] *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5ᵗʰ Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege

_____

[7]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11ᵗʰ Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." *Weissman v. Nat'l Ass'n of Sec. Dealers*, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing *Associated Builders, Inc.*, 505 F.2d at 99).

As the Supreme Court reiterated recently in *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

In the instant case, regardless of the legal source of plaintiff's claims (tort law or constitutional law), the crux of them all is that the Air Force is engaging in covert activities involving a laser, radioactive substances, or chemicals directed at plaintiff's home. However, plaintiff's contention that the Air Force is committing the alleged misconduct is based on unwarranted deductions of fact and unreasonable inferences. There is no factual content in the complaint to reasonably warrant plaintiff's assertion that the Air Force did anything.

Plaintiff's contention of liability is based, in part, on an alleged 2002 news report "that Congress gave the U.S. Air Force permission to use the Laser to touch down to earth," and on the alleged speculation of a congressional staffer in 2004

that the substance on plaintiff's home may be "from some type of military covert operation that [is] going on in that area." (Doc. 1, p. 3 in ECF). A reasonable person could not infer from these allegations that the Air Force is contaminating plaintiff's home with radiation or chemicals. Plaintiff also appears to base his claim of Air Force responsibility on information that the Department of the Army – not the Department of the Air Force – engaged in human radiation experiments in the past under different circumstances. But to deduce from "facts" about the Army's past activities that the Air Force is now conducting radiation-based experiments on plaintiff's home is the epitome of an "unwarranted deduction of fact." In addition to the allegations of the complaint, plaintiff has submitted various materials with his court filings. (*See* Docs. 1, 25, 26, 33, 36). However, even assuming, which the court does not decide, that this evidence may be considered, the materials do not plausibly suggest that the Air Force is engaging in the conduct plaintiff attributes to it. In sum, taking the well pleaded allegations of the complaint as true and evaluating all reasonable inferences derived from those facts in the light most favorable to the plaintiff, they fail to raise a right to relief against the defendants above the speculative level. Therefore, the complaint should be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1. That plaintiff's tort claims asserted under the Federal Tort Claims Act be DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction, and that plaintiff's constitutional claims be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

2. That in the alternative, defendants' motion to dismiss (doc. 18) be GRANTED and all of plaintiff's claims be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 30th day of June, 2010.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).